UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LOREN WAYNE TIDWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-254 WL |
| | ) | |
| EDWIN BUSS, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Loren Wayne Tidwell, a *pro se* prisoner, filed a motion to alter or amend judgment pursuant to FED. R. CIV. P. 59(e). Mr. Tidwell argues that this court erred by denying his habeas corpus petition without ordering the respondent to respond. Section 2254 Habeas Corpus Rule 4 provides for the dismissal of a habeas corpus petition when, "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . .." This petition presents no basis for relief and therefore no response was necessary. Mr. Tidwell argues that the court dismissed the petition without having the record before it. Here, none of Mr. Tidwell's arguments presented a claim which could form the basis for habeas relief, therefore it was unnecessary to request the record.

Citing *Blackledge v. Allison*, 431 U.S. 63 (1977), Mr. Tidwell argues that it was improper to use RULE 4 to dismiss his petition. *Blackledge* involved a habeas challenge alleging that "his guilty plea was induced by an unkept promise, and therefore was not the free and willing choice of the petitioner, and should be set aside by this Court. An unkept bargain which has induced a guilty plea is grounds for relief." *Blackledge v. Allison*, 431 U.S. 63, 68 (1977) (quotation marks and

brackets omitted). The district court summarily dismissed the petition and the supreme court affirmed the circuit's reversal of that ruling.

> The appellate court reasoned that when a *pro se*, indigent prisoner makes allegations that, if proved, would entitle him to habeas corpus relief, he should not be required to prove his allegations in advance of an evidentiary hearing, at least in the absence of counter affidavits conclusively proving their falsity.

*Blackledge v. Allison*, 431 U.S. 63, 70-71 (1977).

> The allegations in this case were not in themselves so vague or conclusory, as to warrant dismissal for that reason alone. Allison alleged as a ground for relief that his plea was induced by an unkept promise. But he did not stop there. He proceeded to elaborate upon this claim with specific factual allegations. The petition indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication. The critical question is whether these allegations, when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false, as to warrant summary dismissal. In the light of the nature of the record of the proceeding at which the guilty plea was accepted, and of the ambiguous status of the process of plea bargaining at the time the guilty plea was made, we conclude that Allison's petition should not have been summarily dismissed.

*Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977) (quotation marks, brackets, citations, and footnotes omitted).

This court does not disagree with *Blackledge*, but it's holding is not applicable here. In *Blackledge*, the petitioner alleged a viable legal theory and the district court erroneously made factual findings without the record or a response. Here, Mr. Tidwell did not present a viable legal claim and the court accepted as true the facts he presented. Unlike *Blackledge*, Mr. Tidwell has not made "allegations that, if proved, would entitle him to habeas corpus relief." Though he does not acknowledge it, Mr. Tidwell's allegations ask this court to invent new legal rights that do not exist for petitioner's challenging prison disciplinary hearings.

Mr. Tidwell alleges that this court misunderstood his claims.

> Petitioner does not request that experts be hired to conduct a test, but that the A.I.T. Lab who conducted the urine test and reported the positive test results, which has a certified toxicologist to be consulted concerning the cross-reactivity and false positive results of authorized medications because when urine samples are submitted to A.I.T. Lab, they are not told of the authorized medications that a inmate receives.

Motion at 4-5. This is a distinction without a difference. The lab performed the testing it was hired to do. Mr. Tidwell asks that they either be hired to do different work, or that they be required to do additional work. He understands that the report he wants does not exist. He is correct that the prison may not withhold exculpatory evidence that it has, but here, no exculpatory evidence exists. What he is asking is that potentially exculpatory evidence be created for him. That is the crux of this court's original ruling. In a DHB hearing, an inmate does not have the right to require the production of materials not in existence, he does not have the right to cross examine the lab technician, or any other witness. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("no right to confront or cross-examine adverse witnesses in his disciplinary proceeding.")

Mr. Tidwell misunderstands the nature of a prison disciplinary proceeding and confuses the type of procedures that are appropriate in a trial court with those before the DHB. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "[O]ne cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff* at 560. "Prison disciplinary proceedings . . . take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Wolff* at 561.

> [T]he proceedings to ascertain and sanction misconduct themselves play a major role in furthering the institutional goal of modifying the behavior and value systems of

3

> prison inmates sufficiently to permit them to live within the law when they are released. Inevitably there is a great range of personality and character among those who have transgressed the criminal law. Some are more amenable to suggestion and persuasion than others. Some may be incorrigible and would merely disrupt and exploit the disciplinary process for their own ends. With some, rehabilitation may be best achieved by simulating procedures of a free society to the maximum possible extent; but with others, it may be essential that discipline be swift and sure. In any event, it is argued, there would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the criminal trial, very likely raise the level of confrontation between staff and inmate, and make more difficult the utilization of the disciplinary process as a tool to advance the rehabilitative goals of the institution. This consideration, along with the necessity to maintain an acceptable level of personal security in the institution, must be taken into account . . ..

*Wolff v. McDonnell*, 418 U.S. 539, 562-563 (1974) (footnote omitted). Mr. Tidwell has not alleged any violations of his *Wolff* rights which could be the basis for habeas relief.

> *Baxter v. Palmigiano*, 425 U.S. 308 (1976), warns the courts of appeals not to add to the procedures required by *Wolff*, which, *Baxter* held, represents a balance of interests that should not be further adjusted in favor of prisoners. Indiana has played by the rules articulated in *Wolff*.

*White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

For the foregoing reasons, the court **DENIES** the motion (docket # 7) to alter or amend the judgment.

SO ORDERED.

ENTERED: August  13  , 2007

 s/William C. Lee
William C. Lee, Judge
United States District Court

4